CHARLES BURKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SYLVIA BURKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4560, 4561. Promulgated December 4, 1945.

*Rhodes E. Cave, Esq.*, for the petitioners.
*Loyal E. Keir, Esq.*, for the respondent.

1168

## OPINION.

VAN FOSSAN, *Judge*: The first issue involves the taxability of the $50,000 paid to Signal Hill under the terms of the contract of April 19, 1939 (correcting the original contract of April 11, 1939). The respondent states that the decisive test as to such taxability is "whether Signal Hill, in making the assignments of fractional interests in the two leaseholds, reserved or withheld a certain amount of the oil in place and was solely dependent upon such oil reserves and the production therefrom for the recovery of the stipulated sum, or whether it made an outright sale without reservation of an economic interest and looked to the personal covenant of the petitioners for payment of the purchase price."

The respondent asserts that the terms of the contract imposed a personal covenant upon the petitioners to pay the contractual sum and relies on *Anderson* v. *Helvering*, 310 U. S. 404. The petitioners contend that the $50,000 is taxable to Signal Hill as the owner of the oil payment and not to the petitioners, the owners of the interest out of which such payment had been carved. They rely on *Thomas* v. *Perkins*, 301 U. S. 655, and kindred cases. See *E. C. Laster*, 43 B. T. A. 159.

We have here two contracts—one an oral contract of sale by Signal Hill of all its undivided interest in two leases, the interests sold being a sixteen ninety-sixths interest in the Fred Lee lease and a one-eighth interest in the Nathan Lee lease, plus 6,250 shares of the Haynes-Thomas Drilling Corporation, the consideration being $5,000 cash (allocated by the parties to the payment for the stock) and the execution of a written contract denominated on execution "Oil Payment." Absolute assignment with respect to the Nathan Lee lease was executed by Signal Hill, but the same was not done as to the Fred Lee lease, petitioner already holding a record title to the same.

By the written contract petitioner and his wife, owners of thirteen-sixteenths interest in the Fred Lee lease and five-sixteenths of a seven-eighths interest in the Nathan Lee lease, sold and assigned to Signal Hill an undivided one-third of seven-eighths (seven twenty-fourths) of the oil saved, produced, sold, and marketed from tract one (the Fred Lee lease) and one-fourth of seven-eighths (seven thirty-seconds) of the oil saved, produced, sold, and marketed from tract two (the Nathan Lee lease) until the assignee (Signal Hill) should receive from the proceeds from the sale of the proportionate part of the oil sold from the two tracts the sum of $50,000. Any oil purchaser was authorized to pay direct to Signal Hill. Upon receipt by Signal Hill of $50,000 the assignment became void. It was contemplated that the payment would be discharged in two years and assignor (the petitioner) had the right at any time to pay off any balance due. The assignee was given a lien covering the one-third interest in the Fred Lee lease and the one-fourth interest in the Nathan Lee lease to secure the payment.

It will be noted that while Signal Hill orally sold the petitioner a sixteen-ninety-sixths, or a one-sixth interest in the Fred Lee lease and a one-eighth interest in the Nathan Lee lease, by the terms of the written contract petitioner assigned and sold to Signal Hill a seven-twenty-fourths interest in the oil produced and sold from the Fred Lee lease and seven-thirty-seconds of the oil sold from the Nathan Lee lease, payable in oil payments to the total amount of $50,000. That is to say, the interests in the leases sold by Signal Hill to petitioner do not coincide in amount with the percentage of oil sold under the oil payment contract. By virtue of this difference, Signal Hill

received from the petitioner a greater interest from which the oil payment was to come than the property sold by it to the petitioner. A similar situation exists as to the property covered by the lien. The question raised by this fact is whether the additional interest was such a reservation of an additional type of security for the deferred payment as served to distinguish the case from *Thomas* v. *Perkins*, *supra*, as did the reservation of an interest in the fee in *Anderson* v. *Helvering*, *supra*.

The decided cases have laid down certain basic principles here pertinent:

1. The same basic issue determines both to whom income derived from the production of oil is taxable and to whom depletion is allowable, that issue being who has a capital investment in the oil in place and what is the extent of that interest.

2. The sole owner of oil properties is taxable on gross proceeds of production and is granted a deduction for depletion as compensation for consumption of his capital.

3. The reasons for depletion deductions do not apply where there is an outright sale of an interest in oil property for cash.

4. Where a sale of oil property is made, the seller reserving the right to receive oil payments up to an agreed amount in payment and seller reserving no security or personal obligation, the seller is deemed to have reserved from the sale such proportionate part of the oil and is entitled to depletion and is chargeable with income arising from the oil so reserved.

5. Where a seller reserves other security in addition to the oil payments, he is deemed to have made an outright sale and the proceeds from oil production paid to the seller under the oil payment contract are includible in the gross income of the purchaser.

In *Anderson* v. *Helvering* the Supreme Court had for consideration a situation involving the same fundamental question presented by the instant case. The Court there stated:

* * * this Court in *Thomas* v. *Perkins* decided that the provision in the lease for payments solely out of oil production should be regarded as a reservation from the granting clause of an amount of oil sufficient to make the agreed payments, and should be given the same tax consequences as a provision for oil royalties. The decision did not turn upon the particular instrument involved, or upon the formalities of the conveyancer's art, but rested upon the practical consequences of the provision for payments of that type.

Relying on the last quoted statement, although the facts are thereby confused, we see no obstacle in the fact that the oil payment was provided for in a written contract while the two lease interests which were sold were conveyed by oral agreement, followed by written assignment as to one lease. Treating both contracts as one and thus placing the parties in the same relative position as in the cited cases,

we may consider Signal Hill as assignor and petitioner as assignee. The questions thus posed are, what are the nature and extent of the interests in oil sold, and what was reserved?

In the *Anderson* case the decision was adverse to petitioner's position because the transfer included the reservation of an interest in the fee, in addition to the interest in the oil produced. While in the instant case the interest in oil produced was the sole resort for payment, there is a barrier, erected by the parties to the contract, which precludes a decision favorable to petitioner. In the *Anderson* case the Court observed:

> * * * But our decision in *Thomas* v. *Perkins* does not require that payments reserved to the transferor of oil properties shall for tax purposes be treated dis-tributively, and not as a whole, depending upon the source from which each dollar is derived. An extension of that decision to cover the case at bar would create additional, and in our opinion, unnecessary, difficulties to the allocation for income tax purposes of such payments and of the allowance for depletion between transferor and transferee.

The quoted language perfectly describes the situation in the present case. By reason of the fact that Signal Hill sold petitioner only a one-sixth interest in the Fred Lee lease and a one-eighth interest in the Nathan Lee lease, whereas the oil payment contract sold and conveyed all of the oil saved and produced from seven-twenty-fourths of the Fred Lee lease and seven-thirty-seconds of the Nathan Lee lease, some sort of allocation of depletion between Signal Hill and petitioner would be necessary. Whether such an apportionment based on the relative fractional interests can be made we do not feel called on to determine. It is clear that such a computation presents, and well illustrates, the very difficulties of which the Supreme Court spoke and which it refused to encourage in the *Anderson* case. Thus it is that decision must be for the respondent on this issue.

A further obstacle in petitioner's path is the lien reserved in the contract. The contract gave Signal Hill a lien on the undivided one-third interest in the Fred Lee lease and on the undivided one-fourth interest in the Nathan Lee lease. Thus the lien covered a greater interest than that sold by petitioner. The right to resort to the excess interest in the leases to protect the payment constituted an additional security reserved. The lien here given was not limited as was the lien in the *Anderson* case, which was solely on oil and gas produced.

The second issue challenges the respondent's right to tax the petitioners on the one-sixteenth interest in the Nathan Lee lease purported to be owned by Myles and, together with the petitioners' one-fourth interest therein, sold to Texas in 1940. As the respondent has well said, this issue is purely factual. He interpreted the stipulated facts as showing that the petitioners, in substance, assigned a five-sixteenths interest in the lease to Texas. He argues that petitioner Burke at all times (except immediately before the sale to Texas) held and exer-

cised the ownership rights to the five-sixteenths interest and, prior to the sale, treated the so-called one-sixteenth interest of Myles as belonging to the partnership.

The stipulated facts recite that, in consideration of services rendered and to be rendered by Myles to the partnership as its general manager, he would receive a one-sixteenth interest in the Nathan Lee lease and a one-fifth interest in future oil and gas leases acquired by the partnership. The only condition mentioned was that the financial position of the partnership must permit its transfer. Myles agreed to pay his share of the development and operating expenses of the enterprise after such conveyance to him. The partnership and Myles agreed that, upon the sale of any partnership interest in any oil lease before the transfer to him of the one-fifth interest in the partnership leases, Myles would receive his proportionate share of the sale price.

On January 23, 1940, Texas orally agreed to purchase the Nathan Lee leasehold for $275,000, to be allocated proportionately among the interest holders. The petitioner had retained the record title to the entire five-sixteenths interest in the Nathan Lee lease in his own name until, at the suggestion of Texas, he and his wife conveyed the one-sixteenth interest therein to Myles. Thus the petitioner, Myles, and Texas all recognized Myles as the owner of an interest in the lease. Formal assignments to Texas were duly executed by the partnership and Myles for their respective interests.

In Illinois oral contracts for the transfer of real estate in consideration of services to be rendered have been held valid. *Fleming v. Dillon*, 370 Ill. 325; 18 N. E. (2d) 910, and cases there cited. In *Gray v. Schoonmaker*, 30 Fed. Supp. 1019, the United States District Court for the Eastern District of Illinois held that when one party has knowingly aided or permitted the other to do acts in partial performance of an oral agreement, and the other has relied thereon and thereby the relationship between the parties has been changed, as would not have occurred but for the contract, the courts will enforce such a contract even if the statutes of fraud would otherwise bar the completion of the contract (see cases there cited).

Myles continued to serve as manager of the partnership properties, thus establishing himself as the equitable owner of the one-sixteenth interest in the Nathan Lee lease. The partnership, through the petitioner as its owner of record, held the Myles' interest in the lease in trust for his benefit. *Miedema v. Wornhoudt*, 288 Ill. 537; 123 N. E. 596. Myles' ownership of the one-sixteenth interest in the Nathan Lee lease is fully supported by the record, and the $17,187.50 received by him from Texas upon the sale of that interest is includible in his gross income and not in the gross income of the petitioners.

In the recomputation of the tax, due consideration will be given to the figures stipulated by the parties.

*Decisions will be entered under Rule 50.*