San Gabriel Valley Dump, Inc. v. Commissioner.
San Gabriel Valley Dump, Inc. v. Commissioner
Docket No. 1708-66.
United States Tax Court
T.C. Memo 1968-134; 1968 Tax Ct. Memo LEXIS 162; 27 T.C.M. (CCH) 652; T.C.M. (RIA) 68134; June 27, 1968, Filed *162 Austin H. Peck, Jr., Seventeenth Floor, 615 S. Flower St., Los Angeles, Calif., and M. Rogue Hemley, for the petitioner. Marion Malone, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in petitioner's income taxes for the calendar years 1960 through 1964 in the following amounts: Year
Deficiency
1960
$ 1,012.26
1961
7,243.68
1962
28,800.14
1963
37,182.43
1964
33,449.06
In his statutory notice of deficiencies, respondent determined that a $40 mathematical error existed in petitioner's 1962 return, resulting in an overstatement of its deductions. He now concedes that no such error existed in the return. The only issue remaining is whether amounts petitioner deducted as rent expense for the years 1958 through 1964 represented valid deductions or exclusions from its gross income. [1]
*163 Findings of Fact Some of the facts are stipulated and are so found. The petitioner, San Gabriel Dump, Inc., is a corporation organized under the laws of the State of California, having its principal office, at the time the petition in this 653 case was filed and all other relevant times, at Gardena, California. Its Federal income tax returns for the calendar years 1958 through 1964 were filed with the district director of internal revenue at Los Angeles, California. During the years in issue petitioner has engaged in the business of operating a rubbish dump on approximately 500 acres of real property located in the San Gabriel Valley, just east of Los Angeles, California (hereinafter referred to as the "San Gabriel site"). Petitioner's sole shareholder is William R. Ward (hereinafter sometimes referred to as Ward). Prior to incorporating the petitioner, Ward operated a small rubbish dump in the Gardena area of California, filling in the old Dominguez Estuary. While he was filling in the estuary, Ward was contacted by two business partners, Maynard B. Henry and Raymond C. Christl (hereinafter sometimes referred to as Henry and Christl, respectively). Henry and Christl *164 informed Ward that they had located and were prepared to develop a large garbage dump site in Baldwin Hills, California (hereinafter sometimes referred to as the Baldwin Hills site). Ward was experienced in the garbage disposal business, and they wanted him as the active manager of the dump site. As consideration, they offered, and Ward accepted, 35 percent of the net profits of the business. Ward was satisfied with the agreement, concluding that since Henry and Christl had obtained the site and done the bulk of the work, they were entitled to a large percentage of the profits. The remaining shares of the Baldwin Hills site profits (apart from Ward's 35 percent) were owned 47 i/2 percent by Christl and his family, 12 1/2 percent by Henry, and 5 percent by a fourth party, who had been instrumental in developing the operation. Ward was quite pleased to become involved with Henry and Christl because, in his own words - Moving from Gardena into the central part of Los Angeles put me, I should say, probably in the big league operation. Before then I was a small dump operator. Now I was regarded as a big dump operator, and they explained to me, "This is just the beginning. We have actively *165 been looking for dump sites for many years. We know that end of the business. "We think you are a good operator. We will continue to seek out good sites, and if we find them, would you operate them for us on some similar business basis?" And I said I would. The Baldwin Hills site turned out to be quite successful and all parties involved were generally pleased that they had entered into the agreement. In light of this success, future endeavors along similar lines were contemplated. Ward was valuable to Henry and Christl because he was a good manager. Christl and Henry were valuable to Ward because they were willing to undertake those facets of developing and maintaining a site for which Ward either did not have time or was disinterested. Ward was solely interested in managing dumps. Henry and Christl were willing to find and qualify suitable sites. Henry, an attorney, was an expert at obtaining the various zoning changes and permits needed to legally operate a dump. Christl was good at "following through on detail," reminding Ward of his operating responsibilities, and looking into possibilities for new sites. Ward was quite willing to have Henry and Christl join him in developing *166 the San Gabriel site when the Pellissier family, who owned the site, approached him in regard to his operating a dump there. He handled the negotiations for the San Gabriel site himself because the Pellissier family trusted him and had respect for his managerial abilities in operating a garbage dump. During the negotiations, he was acting for Henry and Christl and informed the Pellissiers that Henry, though not necessarily Christl, was also to be an interested party to whatever agreement was eventually reached. While negotiations were in progress with the Pellissiers, in regard to leasing their property, Ward, Henry and Christl were discussing the interest which each would have in whatever agreement was reached with the land owners. Though the Baldwin Hills site had worked out successfully, neither Ward, Henry nor Christl was entirely satisfied with the limited partnership arrangement under which they had been operating. In the Baldwin Hills site operation, Ward, in addition to operating the dump, also operated an earth-moving business which rented equipment to the Baldwin Hills site partnership. In addition Ward operated a garbage hauling operation which used the Baldwin Hills *167 site. Ward had sole charge of operating the dump, therefore he could rent as much equipment from his leasing 654 company and charge as low a rate to his hauling operation for dumping privileges as he wished. This gave Ward the ability to affect both the income and the expenses of the Baldwin Hills site for his own benefit. Henry and Christl were dissatisfied that Ward was able to manipulate both income and expenses without their being able to control him. Ward himself was dissatisfied with the conflict of interest which his multiple interests created and felt it unfair to his partners that his leasing decisions in regard to his own company could determine whether or not the Baldwin Hills site made a profit. It was agreed between Ward, Henry and Christl that the point of friction present in the Baldwin Hills site could be avoided in the San Gabriel site if instead of there being a sharing of profits, there was a payment by Ward to the other two of a portion of the gross receipts of the operation in the form of rent for the use of Henry's and Christl's interest in the site. If the parties had operated the San Gabriel site as a partnership, it had been decided by them that Ward *168 would be entitled to 50 percent of the net profits as opposed to 35 percent of the Baldwin Hills project. They considered the larger percentage justified because of Ward's participation in obtaining the new site and because the larger scale of the operation would take more of Ward's time. Ward's, Henry's and Christl's experience in the dumping business indicated that 50 percent of gross receipts generally represented the total gross profit. Since they did not own the San Gabriel site, they assumed that an additional 20 percent of gross receipts from the San Gabriel site would go to the Pellissiers for the lease on this land. This meant that 30 percent of gross receipts could be expected to be available for Ward, Henry and Christl as their profit, and a payment of 15 percent of gross receipts to Henry and Christl from Ward was considered to represent the fair rental of Henry's and Christl's 50 percent interest in the San Gabriel site. The following agreements were subseequently entered into. On August 6, 1957, Henry and Ward entered into an "Ancillary Agreement" which provided that because Ward and Henry were partners in Ward Disposal Ltd. (the Baldwin site), and Henry had contributed *169 past services, Henry was to receive a sublease from Ward on the San Gabriel site. This sublease was to be in lieu of any partnership interest or obligation for services rendered. It further provided that Henry would in turn sublet to a corporation designated by Ward at a rental to be subsequently negotiated. The agreement reads as follows: ANCILLARY AGREEMENT This Ancillary Agreement made and entered into this 6th day of August, 1957, by and between MAYNARD B. HENRY, hereinafter referred to as "Henry," and WILLIAM R. WARD, hereinafter referred to as "Ward." WITNESSETH: WHEREAS Henry has been and now is a duly licensed practising attorney in the State of California; and WHEREAS over a period of years he has aided Ward in the conduct of his various businesses by advice, both professional and otherwise; and WHEREAS said services for the most part have been uncompensated; and WHEREAS Ward and Henry are now partners in a certain limited partnership known as "WARD DISPOSAL LTD."; and WHEREAS Ward and Henry have heretofore explored the possibility of acquiring additional land within the County of Los Angeles both in the Westerly and Easterly portions thereof, for extension *170 of their present partnership activities; and WHEREAS negotiations are now pending between Ward and SAN JOSE DEVELOPMENT Co. INC. for the leasing of some five hundred acres in the Eastern portion of Los Angeles County for dump purposes; and WHEREAS the parties hereto have decided not to extend the partnership activity to these proposed additional acres; and WHEREAS in lieu of Henry's partnership rights and in compensation for services heretofore rendered, Ward desires to grant Henry, or nominee, a sublease upon the lands to be leased to him from the said San Jose Development Co., Inc.; and WHEREAS Henry is willing to accept such a sublease: NOW, THEREFORE, it is mutually agreed as follows: FIRST: In the event Ward shall lease from San Jose Development Co., Inc. or other Lessor, a certain parcel of real estate situate in Los Angeles County, 655 State of California, described as Lot A of Tract 4055, as per map thereof recorded in Book 43 Page 38 of map in the Office of the County Recorder of Los Angeles County, consisting of five hundred acres, more or less, Ward agrees to sublet to Henry or nominee, the said parcel of real property for and at the same rental that he has *171 agreed to pay the Lessor. SECOND: Henry agrees after receiving the aforesaid sublease on said land, to sublet further all of said land to a corporation designated by Ward at a rental to be negotiated between Henry and said Corporation. THIRD: Henry does hereby release Ward from any breach of partnership obligation or agreement in obtaining for his own use and benefit the Master Lease hereinbefore referred to. IN WITNESS WHEREOF the parties hereto have executed the foregoing. /s/ Maynard B. Henry Maynard B. Henry /s/ William R. Ward William R. Ward Another agreement was later executed calling for Ward to pay Henry $1,000 in legal fees in regard to the San Gabriel site and it also made provision for additional lands to be added to the proposed sublease. It reads as follows: AGREEMENT THIS AGREEMENT made and entered into this day of August, 1957, in the City of Los Angeles, by and between: WILLIAM R. WARD, hereinafter referred to as "Ward", and MAYNARD B. HENRY, hereinafter referred to as "Henry". Upon the mutual covenants, promises and agreements hereinafter contained; WITNESSETH FIRST: Henry agrees to render such legal services to Ward as may be necessary in *172 filing and prosecuting before the Regional Planning Commission of the County of Los Angeles, an application for a zone exception pertaining to a proposed refuse disposal dump on land to be leased to him by the San Jose Development Co., Inc., and further to render such legal services as may be necessary in obtaining an industrial waste permit for the same Ward, or nominee, pertaining to said land. SECOND: Ward agrees to pay Henry the sum of $1,000.00 Attorney's Fees for said services to be rendered and, in addition thereto, to pay all costs incidental to both applications including engineering, filing, map preparation, aerial photography and any other expenses arising therefrom. THIRD: In the event Ward shall lease additional land from the San Jose Development Co., Inc., or any organization shall so do in which Ward is a substantial participant, then in that event, said additional land shall be included in that certain sublease between Ward and M. B. Henry, Inc., as though same had originally been a part of said included lands. In the event Ward or any organization of which he is a substantial participant shall obtain additional lands in the near vicinity of the lands being the subject *173 matter of the aforementioned lease, then Ward agrees to prepare a new sublease to M. B. Henry, Inc. identical in form to the existent sublease heretofore referred to. IN WITNESS WHEREOF, the parties hereto have executed the foregoing Agreement on the day, month and year first above-mentioned. /s/ William R. Ward WILLIAM R. WARD /s/ Maynard B. Henry MAYNARD B. HENRY On August 14, 1957, Ward entered into an agreement to lease the San Gabriel site as a garbage dump operation for a period of 30 years. The agreement was with the San Jose Development Co., Inc., a corporation which was owned by the Pellissier family and was unrelated to Ward, Henry or Christl. The agreement provided inter alia that Ward would operate and maintain the premises of the San Gabriel site and assume all expenses in connection therewith, with the exception of the Los Angeles County real estate taxes. The rent was essentially 20 percent of the gross monthly receipts from dumping operations with a minimum rental of $6,000 the first year and $12,000 in excess of the lessor's county taxes thereafter. The lease was not assignable without the consent of the lessor. In the event of Ward's death, the lessor *174 had the option of operating the premises or buying out the lessee's interest in the remaining term of the lease. In the case of condemnation of the premises the lessee was not entitled to any amount other than twothirds of any payment made for injury to or impairment of dumping or reclamation rights. Rental payments were required to be made for each month, within 15 days after the close of the month. The lessee was required to keep books of account and a cash register. The books were to be allowed 656 audited once each quarter year and if a corporate assignee operated the lease, franchise and Federal income tax returns of same were to be allowed examined. The cash register tapes were to be mailed to the lessor. Receipts were to be issued to all customers and a written explanation of credits issued or no charges made were to be sent to the lessor. Rates charged were to be no less than those normally charged for dumping purposes. On the same date the master lease was entered into, Ward sublet substantially the same premises to M. B. Henry, Inc., a corporation owned solely by Henry, and promised to pay to that corporation one-half of any condemnation proceeds he received from *175 the lease. The sublease reads as follows: SUBLEASE. This Indenture made the 14th day of August, 1957, between WILLIAM R. WARD, herein called "Sublessor" and M. B. HENRY, INC., a California corporation, herein called "Sublessee", WITNESSETH: THAT WHEREAS, Sublessor herein owns that certain dump lease, hereinafter referred to as "Master Dump Lease", dated the 14th day of August, 1957, wherein SAN JOSE DEVELOPMENT Co., INC. is Lessor, and the Sublessor herein is the Lessee thereunder, recorded the day of August, 1957, as Document No. , in the Official Records of Los Angeles County; and WHEREAS, the parties hereby desire that all of said property described in said Master Dump Lease shall be subleased on the terms herein stated: NOW, THEREFORE, Sublessor and Sublessee do hereby agree as follows: 1. Sublessor does hereby sublet and sublease to Sublessee, and Sublessee does hereby take and accept from Sublessor all the premises described in said Master Dump Lease, subject to each and all of the terms and provisions of such Master Dump Lease, for the full term thereof, less one day. The Sublessor hereby agrees to pay, upon receipt thereof, to Sublessee one-half (i/2) of all *176 proceeds received by Sublessor from any condemnation award or sales price in lieu of condemnation, pursuant to Paragraph 24 of said Master Dump Lease. 2. Sublessee herein does hereby promise, covenant and agree with Sublessor, for the express benefit of San Jose Development Co., Inc. that Sublessee will do and perform, and does hereby expressly assume the performance, faithfully and promptly of each and all of the matters and things required to be done or performed by Lessee under the terms of said Master Dump Lease. 3. Sublessee herein covenants and agrees to sublet all of the premises included hereunder, and described in said Master Dump Lease for the full term hereof, less two days, unto SAN GABRIEL VALLEY DUMP, INC., a California corporation, on the terms and conditions set forth in Sublease between Sublessee herein and said San Gabriel Valley Dump, Inc., hereto attached, such that, subject to performance by San Gabriel Valley Dump, Inc. of the terms of its Sublease from Sublessor herein, San Gabriel Valley Dump, Inc. for the full term (less two days) of such Master Dump Lease, shall have and enjoy exclusive possession and exclusive management of all of the dumping and related *177 operations upon all of the premises described in said Master Dump Lease. IN WITNESS WHEREOF, the parties hereto have executed this Sublease, in triplicate originals, the day and year first above written. /s/ William R. Ward William R. Ward, Sublessor. M. B. HENRY, INC. (CORPORATE SEAL) By /s/ Maynard B. Henry President ATTEST: /s/ [Illegible] Secretary Sublessee. * * * CONSENT TO SUBLEASE. The undersigned, SAN JOSE DEVELOPMENT Co., INC., does hereby consent to the foregoing Sublease this 14th day of August, 1957, on condition that M. B. HENRY, INC. and SAN GABRIEL VALLEY DUMP, INC. promptly enter into the operation of Dump Sublease referred to in Paragraph 3 of the foregoing Sublease, and on condition that such Sublessee faithfully observes and performs the obligations of said Master Dump Lease. SAN JOSE @DEVELOPMENT Co., INC. (CORPORATE SEAL) By /s/ Frank L. Pellissier President. ATTEST: /s/ [Illegible] Secretary. 657 The reservation of two days of the full term was to assure the assignor the rights of a sublessor, as opposed to an assignor of property. See Witkin, Summary of California Law (Real Property), par. 270 (7th ed. *178 1960). On the same date of the master lease and and sublease (August 14, 1957), M. B. Henry, Inc., entered into an "Operating Dump Sublease" with the petitioner in this case, San Gabriel [Valley] Dump, Inc., under which petitioner obtained basically the premises received by M. B. Henry, Inc., from Ward, subject to the conditions set out by the master dump lease originally granted to Ward. In return for the premises petitioner agreed to pay 15 percent of the gross receipts from the operation of the San Gabriel site, under the same conditions and controls as the master dump lease provided for remittance of rent. The sublessor also reserved the right to cure any default of the sublessee of the terms of the master lease. The agreement reads as follows: OPERATING DUMP SUBLEASE. This Indenture made the 14th day of August, 1957, between M. B. HENRY, INC., a California corporation, herein called "Sublessor" and SAN GABRIEL VALLEY DUMP, INC., a California corporation herein sometimes called "Sublesseee"; WITNESSETH: THAT WHEREAS, on the 14th day of August, 1957, San Jose Development Co., Inc., as Lessor therein, executed a Dump Lease herein referred to as "Master Dump Lease" to *179 William R. Ward, which was recorded the day of August, 1957, as Document No. in the Office of the County Recorder of Los Angeles County; and WHEREAS, on the 14th day of August, 1957, said William R. Ward sublet all of the premises described in said Master Dump Lease unto M. B. Henry, Inc., a California corporation, for the full term of said Master Dump Lease, less one day; and WHEREAS, San Gabriel Valley Dump, Inc. desires, subject to all the terms and conditions set forth in said Master Dump Lease, to obtain, on the terms herein set forth, this Sublease of said premises for the full term of said Master Dump Lease, less two days; NOW, THEREFORE, in consideration of the premises and performance of all of the covenants and agreements of the parties hereto, hereinafter set forth, they do hereby agree: 1. Subject to all of the terms, conditions and provisions of said Master Dump Lease, Sublessor herein does hereby, on the terms herein set forth, sublease and sublet unto SAN GABRIEL VALLEY DUMP, INC. all of that certain real property described in said Master Dump Lease for the full term thereof, less two days, that is to say until the 29th day of July, 1987, and San Gabriel Valley *180 Dump, Inc. by the execution hereof, does hereby take and accept this Sublease upon each of the terms and conditions set forth. 2. San Gabriel Valley Dump, Inc. does hereby promise, covenant and agree, for the express benefit of San Jose Development Co., Inc., that San Gabriel Valley Dump, Inc. shall and will faithfully and promptly perform each and every of the covenants and obligations of William R. Ward as Lessee, stated in said Master Dump Lease, and does hereby expressly assume and agree to perform all of such covenants and obligations of said Lessee therein. Sublessor reserves the right, at the expense of Sublessee herein, to cure any default of Sublessee in, or breach by Sublessee of, the terms of said Master Dump Lease. 3. The parties hereto do hereby agree that the Sublessee herein shall pay directly to San Jose Development Co., Inc., all rentals specified to be paid to it under said Master Dump Lease, and that at the time of paying said rent directly to San Jose Development Co., Inc. the Sublessee herein shall forward to the Sublessor herein a signed copy of its statement to the Lessor in said Master Dump Lease showing its gross receipts for the month in question whereon *181 the rentals under said Master Dump Lease are computed and paid. 4. During the full term of this Sublease the Sublessee herein shall have exclusive possession of the demised premises, and exclusive management and control of all dump and related operations conducted there on under the terms of said Master Dump Lease and this Sublease. Sublessor herein agrees that during the full term hereof the Sublessor shall not under any conditions whatsoever in anywise interfere with, interrupt or to any extent attempt to direct or control Sublessee's management of all dumping and related operations on the demised premises. 5. Sublessee promises and agrees monthly, on the 15th day of each month of the term hereof, to pay to Sublessor herein, as rental hereunder fifteen percent (15%) of Sublessee's gross receipts from any and all operations conducted on or from the 658 demised premises during the next preceding calendar month. Sublessor shall have the same rights of inspection, audit and examination of Sublessee's records as does the Lessor under such Master Dump Lease. Such rental to Sublessor under this paragraph shall be in addition to the rental to San Jose Development Co., Inc. under *182 Paragraph 3 hereof. 6. Sublessee expressly covenants and agrees to use its best efforts faithfully and literally to comply with all requirements and operating conditions expressed in the applicable dump permit or permits and in any extension or renewal thereof or substitute therefor. Sublessee further covenants that it will not knowingly or intentionally violate any of the terms, conditions or requirements of such dump permit or permits, or of any extension or renewal thereof or substitute therefor. IN WITNESS WHEREOF, the parties hereto have executed this Instrument, in triplicate originals, the day and year first above written. M. B. HENRY, INC. By /s/ [Illegible] President (CORPORATE SEAL) ATTEST: /s/ [Illegibel] Secretary Sublessor. SAN GABRIEL VALLEY DUMP, INC. By /s/ [Illegible] President ATTEST: /s/ [Illegibel] Secretary Sublessee. * * * CONSENT TO SUBLEASE. The undersigned, SAN JOSE DEVELOPMENT Co., INC. does hereby consent to and approve the foregoing Operating Dump Sublease this 14th day of August, 1957, upon the express condition subsequent that through the term of said Operating Dump Sublease William R. Ward, his estate, or *183 legatees shall own not less than Fifty-one percent (51%) of the outstanding stock of said San Gabriel Valley Dump, Inc., and [sic] any successor thereof and on the further condition that the operations of said sublessee thereunder shall be conducted strictly and faithfully in accordance with the terms of said Master Dump Lease. SAN JOSE DEVELOPMENT Co., INC. (CORPORATE SEAL) By /s/ [Illegible] President ATTEST: /s/ [Illegible] Secretary. The reservation of two days was for the same purpose as the reservation in the sublease discussed above. On November 6, 1957, M. B. Henry, Inc., assigned the sublease to Cerise, Ltd., a limited partnership in which M. B. Henry, Inc., was a general partner with a 1-percent interest, Maynard B. Henry, individually, had a 9-percent interest, and Raymond C. Christl had a 90-percent interest. The consideration recited was $10. The agreement reads as follows: ASSIGNMENT OF SUBLEASE FOR AND IN CONSIDERATION of the sum of TEN DOLLARS ($10.00), receipt of which is hereby acknowledged, M. B. HENRY, INC., a California corporation, does hereby assign to CERISE, LTD., a limited partnership, of which M. B. HENRY, INC. is the General Partner, *184 that certain Sublease made and entered into the 14th day of August, 1957 by and between WILLIAM R. WARD, referred to therein as "Sublessor" and M. B. HENRY, INC., referred to therein as "Sublessee", pertaining to some 503.17 acres, more or less, of Lot "A" of Tract 4005, as per map thereof recorded in Book 43, Page 38 of Maps, in the office of the County Recorder of Los Angeles County. TO HAVE AND TO HOLD unto said assignee and assigns from this day and for all the rest of the term mentioned in said Sublease. IN WITNESS WHEREOF, the assignor does hereby execute the foregoing document this 1 day of November, 1957. M. B. HENRY, INC. (Corporate Seal) By /s/ [Illegible] President CONSENT TO ASSIGNMENT WILLIAM R. WARD, Sublessor in the aforementioned Sublease, does hereby consent to the foregoing assignment. /s/ William R. Ward William R. Ward 659 CONSENT TO ASSIGNMENT SAN JOSE DEVELOPMENT CO., @INC., Lessor and owner of the real property being the subject matter of the foregoing referred to Sublease, does hereby consent to the foregoing assignment. SAN JOSE DEVELOPMENT Co, INC. by /s/ [Illegible] Vice-President By /s/ [Illegible] Asst. Secretary-Treasurer
*185 ACCEPTANCE OF ASSIGNMENT CERISE, LTD., a limited partnership, does hereby accept the foregoing assignment and agrees to be bound by the terms and provisions of said Sublease and to perform the same as though it were originally a party thereto. CERISE, LTD. By: M. B. HENRY, INC., General Partner (Corporate Seal) By /s/ [Illegible] President On the same date, the master dump lease was amended to require the lessor, San Jose Corporation, to purchase the interest of Cerise upon the death of Ward, if it desired to terminate the master agreement. The only business of M. B. Henry, Inc., and Cerise, Ltd., was to execute and enforce the various agreements relating to the San Gabriel site. The net effect of the above agreements was to have petitioner obtain the premises conveyed to Ward by the master dump lease, and subject to the same conditions which that lease imposed upon Ward. They also, of course, had the effect of not continuing the Ward-Henry-Christl partnership relation as to this dump site. Ward underwrote the expenses of obtaining the necessary official approval for operating the San Gabriel site, as he had done for the Baldwin Hills site. He operated the *186 San Gabriel site, through petitioner, during 1957 and 1958, under the conditions stipulated by the agreement, but found that the petitioner was not making a profit on its operations. He complained about this to Henry and Cerise and persuaded them to modify the sublease agreement with M. B. Henry, Inc., so that that corporation's share of the gross receipts was reduced from 15 percent to 10 percent of the gross receipts retroactive to August 14, 1957. On February 2, 1959, an amendment to the operating dump sublease was executed which provided for the rental reduction. At least part of the consideration for the amendment was that Ward was required to personally guarantee performance of the sublease apart from petitioner's obligations. The guarantee reads as follows: CONTINUING GUARANTY TO: M. B. HENRY, INC., a California corporation, and to CERISE, LTD., a limited partnership, jointly and severally. THIS CONTINUING GUARANTY is made, given and entered into this 2 day of February, 1959, by the undersigned, in the City of Los Angeles, State of California, for the purpose of inducing M. B. Henry, Inc., and Cerise, Ltd., to enter into and agree to the terms of a document entitled *187 "Amendment of Operating Sublease", more specifically referred to hereinafter, and is made in consideration of the execution of the said document by the aforesaid M. B. Henry, Inc. and Cerise, Ltd. WITNESSETH: THAT WHEREAS, San Jose Development Co., Inc. as Lessor, entered into a certain document entitled "Master Dump Lease" with William R. Ward, as Lessee, said document being recorded in the Los Angeles County Recorder's Office in Book 56030 at page 230 of Official Records; and WHEREAS, pertaining to the same land being the subject matter of the Master Dump Lease, William R. Ward, as Sublessor, did sublet the said land to M. B. Henry, Inc., a California corporation, by a sublease, recorded in Book 56030 at page 249 of the Official Records in the office of the Los Angeles County Recorder; and WHEREAS, M. B. Henry, Inc. did execute as Sublessor further sublease with San Gabriel Valley Dump, Inc., a California corporation, as Sublessee, said document being entitled "Operating Dump Sublease" and being recorded in the Official Records of the Los Angeles County Recorder's office in Book 56030 at page 254; and WHEREAS, M. B. Henry, Inc. did subsequently assign to Cerise, Ltd. said *188 Sublease to it from William R. Ward, subject to the existing Operating Dump Sublease from it to San Gabriel Valley Dump, Inc., together with the rights to receive all rentals payable thereunder; and WHEREAS, Said Operating Dump Sublease provided for rentals to be paid by the Sublessee monthly in a sum equal to fifteen per cent (15%) of the gross monthly receipts of said San Gabriel Valley Dump, Inc.; and 660 WHEREAS, William R. Ward is the sole owner of all of the outstanding and issued stock of San Gabriel Valley Dump, Inc., and vitally interested in the financial success of said operation; and WHEREAS, to induce M. B. Henry, Inc. to enter into a certain AMENDMENT OF OPERATING DUMP SUBLEASE, dated February 2nd, 1959, and Cerise Ltd., to approve and consent thereto, whereby said monthly rentals payable by San Gabriel Valley Dump, Inc. be reduced from a sum equal to fifteen percent (15%) of the monthly gross receipts to a sum equal to ten percent (10%) thereof, William R. Ward has offered to enter into and does execute this Continuing Guaranty; NOW, THEREFORE, in consideration of M. B. Henry, Inc. entering into that certain AMENDMENT OF OPERATING DUMP SUBLEASE with San Gabriel *189 Valley Dump, Inc., dated February 2nd, 1959, and Cerise, Ltd. approving and consenting thereto, whereby retroactively to the inception thereof rentals due and future rentals payable are modified and reduced to ten percent (10%) of gross receipts, William R. Ward does hereby unconditionally guarantee and promise to pay to Cerise, Ltd., or order, on demand, any and all rents or moneys payable to M. B. Henry, Inc. or Cerise, Ltd. provided for, reserved or payable by reason of that certain OPERATING DUMP SUBLEASE referred to hereinabove, as so amended, thereto when and in the event San Gabriel Valley Dump, Inc. shall fail to pay the same on the due date thereof. William R. Ward agrees that his obligations hereunder are independent of the obligation of San Gabriel Valley Dump, Inc., and consents that a separate action or actions may be brought and prosecuted against him whether said action shall or shall not be brought against San Gabriel Valley Dump, Inc. or whether said corporation shall or shall not be joined in said action or actions. This guaranty shall be irrevocable and continuing in nature. William R. Ward waives any and all rights to require M. B. Henry, Inc. and/ or Cerise, *190 Ltd. to (a) first proceed against San Gabriel Valley Dump, Inc., or (b) pursue any other remedy whatsoever in the power of M. B. Henry, Inc. and/or Cerise, Ltd. or (c) make demands for performance or give any notice of nonperformance prior to commencement of any action against him. It is the intent of William R. Ward that by executing this Continuing Guaranty, that he does hereby give the right to M. B. Henry, Inc. and/or Cerise, Ltd. to immediately proceed against him for the payment of any moneys due from San Gabriel Valley Dump, Inc. under said OPERATING DUMP SUBLEASE, as so amended, on default of or failure of said Sublessee to make such payment of moneys on the due date without qualification. William R. Ward covenants that at no time in the future will San Gabriel Valley Dump, Inc. request or negotiate for any further reduction of rent under said OPERATING DUMP LEASE, as so amended, [sic] William R. Ward agrees to pay all reasonable attorney's fees and other costs and expenses which may be incurred in enforcing this Continuing Guaranty. William R. Ward agrees that in the event San Gabriel Valley Dump, Inc. shall, through default, surrender, cancellation or agreement, to *191 which M. B. Henry, Inc. and Cerise, Ltd. are not consenting parties, pertaining to its OPERATING DUMP SUBLEASE, as amended, no longer be a lessee or sublessee of said lands, and thereafter the said Ward shall be or become the lessee or sublessee or acquire a substantial interest in any such substitute lease or sublease, that he will pay M. B. Henry, Inc. and/or Cerise, Ltd. monthly a sum of money equal to the rent which would have been payable to them or either of them by San Gabriel Valley Dump, Inc. had the said corporation continued to be the sublessee under said OPERATING DUMP LEASE, as so amended, IN WITNESS WHEREOF, the undersigned has executed the foregoing document as of the day, month and year herein first mentioned. William R. Ward /s/ William R. Ward. THE FOREGOING CONTINUING GUARANTY is hereby agreed to, consented to, and entered into and accepted the day, month and year first above written. CERISE, LTD. By M.B. HENRY, INC. [Illegible] [Illegible] (Corporate Seal) M.B. HENRY, INC. [Illegible] By [Illegible] By (Corporate Seal) 661 The above agreement and all other agreements executed between Ward, petitioner, Henry, Christl *192 and Cerise were in connection with continuing interests in developing garbage dump sites. No personal or outside obligation of Ward was intended to be paid or developed as a result of these agreements. Petitioner paid Cerise, Ltd., the agreed rental during the years 1958 through 1964. On its income tax returns for the years 1958 through 1964, petitioners deducted the amounts paid to Cerise as rental expense. In his statutory notice of a deficiency, respondent disallowed these payments as unallowable deductions. Ultimate Finding of Fact The amounts paid by petitioner to Cerise, Ltd., under terms of the rental agreement between M. B. Henry, Inc., and petitioner constituted deductible rental expenditures. Opinion Petitioner, for the calendar years 1958 through 1964, deducted 10 percent of its gross receipts as rent expense paid to Cerise, Ltd., a partnership unrelated to petitioner or its sloe shareholder, William Ward. It is petitioner's principal contention that, under section 162(a)(3) [2] of the Internal Revenue Code, such payments were in fact rental expenses and deductible from gross income. As an alternative theory, it contends that even if *193 the amounts were not paid as rent, they were payable as profits shared from a joint venture of petitioner and Cerise, Ltd., and thus excludable from its gross income. Because we find that the payments in question were deductible as rental expenditures, we do not reach petitioner's alternative theory. To obtain a rental expense deduction for the amounts paid, petitioner need only show that the amounts paid were in fact required to be paid for the use and possession of the San Gabriel site. It need not show that the amounts paid were reasonable. Reasonableness is material only as to the character of the payments, i.e., whether they were in fact rentals. *194 Stanley Imerman, 7 T.C. 1030 (1946); Anderson Dairy, Inc., 39 T.C. 1027 (1963). Whether the payments were in fact required is a question of fact to be determined by the circumstances of each case. Southern Ford Tractor Corp., 29 T.C. 833 (1958). In the instant case, respondent contends that the payments in issue were not required to be paid for the use and possession of the San Gabriel site. It is his contention that Ward obtained the right to use the San Gabriel site as a garbage dump under the terms of the master lease with the San Jose Development Co., which lease did not provide for the payments in issue. When Ward incorporated petitioner, he could have transferred his rights under the master lease to petitioner without having first executed a sublease which called for the payments in issue. Thus, he argues, petitioner could have obtained the use of the San Gabriel site without making the payments in issue. We do not agree. The master lease agreement must be examined in the broader perspective of Ward's prior relationship with Maynard Henry and Raymond Christl and the agreements he entered into with them prior to signing the master lease *195 with San Jose Development Co. Raymond Christl did not testify in the instant case, though he was in the courtroom and thus available to both parties. However, the other principals to the various agreements did testify, including Frank C. Pellissier, president of San Jose Development Co., William Ward and Maynard Henry. They all testified, and we have found, that at the time negotiations were going on in regard to the lease of the grounds for the San Gabriel site, Ward was committed to give Henry and Christl an interest in the lease. Ward and Henry were partners in developing dumping sites and the partnership interest extended on a fifty-fifty basis to whatever leasing arrangement could be worked out in regard to the San Gabriel site. The agreement of August 6, 1957, between Ward and Henry prior to the execution of the master lease, confirmed Henry's and, in effect, Christl's interest in whatever rights Ward could obtain in the San Gabriel site. If the consideration for 662 this agreement was not advantageous to Ward, it does not alter the fact that the interest was established. Cf. Charles Burke, 5 T.C. 1167, (1945); Carl G. Dreymann, 11 T.C. 153 (1948); *196 Paul L. Kuzmick, 11 T.C. 288 (1948). The form of the agreements subsequently entered into show Ward as receiving the right to develop the San Gabriel site, assigning basically all of these rights to M.B. Henry, Inc., and then renting back basically the same rights for an agreed rental. But substantively the agreements simply served to establish Ward, Henry and Christl's interests in the San Gabriel site which they had previously agreed upon. Ward was to receive a 50-percent interest in the right to the profits under the master lease and the net result of the agreements entered into left him with substantially that interest. As respondent has emphasized, it is the substance of transactions which controls the tax consequences, not the form in which the actions were cast, whether or not the taxpayer benefits from the substantive interpretation. Griffiths v. Commissioner, 308 U.S. 355 (1939); W.N. Fry, 5 T.C. 1058, 1069 (1945). Since the existence of a 50-percent interest in the master lease lay effectively in Henry and Christl when the master lease was executed, it was not possible for Ward to give petitioner all of the rights which were conveyed *197 to him by the San Jose Development Co. in the master lease. In order for the petitioner to be able to fully exploit the San Gabriel site, it had to obtain the rights in the master lease in which Henry and Christl had an interest and we find that any payments made by petitioner pursuant to the sublease agreement were those required for the use of the San Gabriel site in its garbage dump operations. Unlike the situations in the cases which respondent cites, petitioner would not have been able to obtain the rights held by Cerise, Ltd., in the absence of these payments. The respective parties dealt at arm's length and there was no family relationship to cloud the issues. Thus, because we have found that the payments in issue were required for the use and possession of the San Gabriel site, we further find that the amounts paid were properly deducted in the years in question as rental expense. Cf. Anderson Dairy, Inc., supra; Stanley Imerman, supra. The fact that the rental payment was based on a percentage of gross receipts and was for the use of a leasehold interest, rather than the property itself, does not affect the character of the payment. Cf. Ernst Kern Co., 1 T.C. 249, 269 (1942); *198 Southern Ford Tractor Corp., supra. In light of respondent's concession on the other issue in this case, Decision will be entered for the petitioner. Footnotes
1. We do not have jurisdiction over either 1958 or 1959, since no deficiency was determined for either year. However, determination of the nature of the amounts deducted in 1958 and 1959 is necessary in order to determine the correct net operating loss to be carried over from those years to years in issue. Cf. General Baking Co., 48 T.C. 201, 202↩ (1967).
2. All references are to the Internal Revenue Code of 1954. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩